UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WANXIA LIAO,

Plaintiff,

v.

JOHN ASHCROFT, et al.,

Defendants.

_______________________________/

No. C 08-2776 PJH

**ORDER GRANTING MOTIONS TO DISMISS**

Before the court is a motion to dismiss filed by defendant Judge Saundra B. Armstrong ("Judge Armstrong") and a separate motion to dismiss filed by defendant United States Representative Christopher Smith ("Representative Smith"). Plaintiff Wanxia Liao ("Liao") did not oppose the motions. Nor did she file statements of non-opposition pursuant to Civil Local Rule 7-3. Because the court finds these matter suitable for decision without oral argument, the hearing date of April 29, 2009 is VACATED pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the court GRANTS the motions to dismiss.

**BACKGROUND**

On June 4, 2008, Liao, in propria persona, filed the original complaint in this case, suing twenty-one defendants, including, among others, John Ashcroft, Judge Claudia Wilken, Bill Lockyer, Heather Fong, CNN and YouTube. See Compl. On September 9, 2008, this case was reassigned to Judge Armstrong. Liao filed a first amended complaint ("FAC") on December 22, 2008, which, among other things, added defendants Judge Armstrong and Representative Smith. See FAC. On February 4, 2009, Judge Armstrong recused herself from presiding over this case. The next day, this case was reassigned to the undersigned.

This case arises out of "racially motivated refusals by United States government officials and California state officials to investigate [Liao's] criminal complaints, and the conspiracy by federal justice administrative officials with the US major media to place a secret prior restraint on [her] Internet free speech about [her] human rights case," Liao v. Cahill, 03-2906-SBA, "without due process of law" for the purpose of covering up her human rights case. FAC ¶ 1. Liao alleges that the defendants, "acting under color of state law, violated [her] "rights to Equal Protection under the Fourteenth Amendment, to free speech under the First Amendment, [and] violated § 1985 of USC for Conspiracy to Interfere with Civil Rights." Id. Through this action, Liao seeks "damages and declaratory relie[f] under Title 42, Section 1983 of the United States Code and other federal and California State statutes." Id.

The facts underlying Liao's "human rights case" are as follows. In 1991, as a masters student at the University of Toronto ("UT"), Liao had an academic dispute with David Waterhouse, a professor in the university's East Asian Studies Department. FAC ¶ 28. Liao submitted a term paper in which she challenged Waterhouse's previously published contention that "beautiful" is a European concept. Id. ¶¶ 28-29. Waterhouse then allegedly retaliated against her by interfering with her Ph.D application through a series of "fraud," in violation of UT's grading and academic regulations, including awarding Liao a "B" as her final grade while the course was still in progress, submitting Liao's grade without having it reviewed by the Chair of the Department, providing a reference letter for Liao's Ph.D application fraudulently identifying himself as her program supervisor, and objecting to Liao's Ph.D application on an erroneous ground. Id. ¶ 30. According to Liao, Waterhouse's fraud directly caused her application for the Ph.D program to be unsuccessful. Id. Liao subsequently lodged a formal complaint with the Ontario Human Rights Commission ("OHRC"). Id. ¶ 31.

Although unclear from the allegations in the FAC, James Cahill ("Cahill"), a professor at the University of California at Berkeley ("UCB"), allegedly became involved in a conspiracy with the Canadian government to cover up Waterhouse's fraud and racial prejudice after learning of Liao's complaint to the OHRC. FAC ¶ 31. In May 1995, before

the OHRC dismissed Liao's complaint, Cahill, the OHRC and the UT allegedly conspired to provoke Liao into engaging in behavior leading to her arrest and subsequent conviction for uttering a death threat to Waterhouse. Id. ¶¶ 31-33.

In April of 2002, Liao filed a civil rights case against Cahill in San Francisco Superior Court. FAC ¶ 34. After her case was dismissed, Liao re-filed it in the Northern District in June 2003. Id. In May 2005, while this case was pending, Liao filed another civil rights case in the Northern District against, among others, two San Francisco Superior Court judges. Both of these cases were ultimately dismissed. Id. ¶¶ 35-36, 80.

Liao alleges that during the course of her civil rights cases, "in order to break the US media ban on [her case]," she tried to publicize her story about her civil rights case on the Internet. FAC ¶ 37. Liao further alleges that, in December 2005, she received a death threat in response to a posting she had made on Yahoo's Message Board about her case. Id. Liao asserts that the individual who posted the threat "was undoubtedly speaking for the US and Canadian governments." Id. Liao subsequently filed several criminal complaints related to the death threat and the facts giving rise to her civil rights case with various state and federal officials. She alleges that these officials racially discriminated against her by refusing to investigate these complaints. See generally id. ¶¶ 38-74. Liao further alleges that the United States media joined the government to cover up the facts of her human rights case by setting up automatic filters on their websites to filter out any information that contained her name and/or web page addresses where she posts information about her cases. Id. ¶¶ 93, 101.

Liao filed the instant action on June 4, 2008. On December 22, 2008, Liao filed an amended complaint, adding Judge Armstrong and Representative Smith as defendants. As to Judge Armstrong, the amended complaint alleges that she is being "sued in her official capacity, under §1983, for a declaratory judgement for violation of Fourteenth Amendment due process right." FAC ¶ 20. Specifically, the amended complaint alleges the following:

> 86. Judge Armstrong as presiding judge over my case against James Cahill had serious abuse of process in handling the case against me and in favor of Cahill. She violated the procedural rules to from the first beginning, since she

disregarded the discovery rules of the federal court that explicitly require the presiding judge to set up discovery steps at the first Case Management Conference, totally ignored the discovery issue at the Conference. It was a deliberate conduct since I had made repeated requests for court's order to abide the defendants to discovery procedures and had submitted proposed discovery plan for the Conference. At the initial Case Management Conference Armstrong did not even allow me the chance to speak to reassert my request, and subsequently disregarded completely my discovery plan that the court must deal with, as if I had no right to discovery. It is clear that this was to meet the need of the Defendant Cahill, as Cahill tried to dodge the discovery issue, never responded to my discovery request. With the help of Judge Armstrong, Cahill indeed got away easily, because my complaint against Cahill involved conspiracy that he conducted with the Canadian governments and the University of Toronto and a White professor Waterhouse. Whether it was a conscious conspiracy or tacit compliance, this was a hidden agenda on Judge Armstrong's part. I did not have the chance to raise this issue to higher court because I was not able to proceed to the appeal process since I could not afford the appeal fee.

87. And Judge Armstrong dismissed my case against Cahill despite there were sufficient evidences that I presented to the court about Cahill's perjury/fraud that essentially changed the calculation of statute of limitations on my complaint in favor of him, and despite that to my accusation of perjury/fraud, Cahill himself did not even respond and such silence could only be taken as admission of my argument. My appeal against Judge Armstrong's order was not heard by the higher court because I was not allowed to proceed in forma pauperis and I was not able to afford the appeal fees at the higher courts, since the higher courts not only require a filing fee, but also there will be subsequent fees in the appeal process.

88. By such conduct, Judge Armstrong abused my right to due process, I therefore seek a declaration that she violated my 14th Amendment due process right.

FAC ¶¶ 86-88.

As to Representative Smith, the amended complaint alleges that Representative Smith, "Chairman of the 109th US Congress Subcommittee on Africa, Global Human Rights and International Operations" is being "sued in his official capacity, under §1983, for a declaratory judgement for violations of 14th Amendment of US Constitution and Article 26 of International Covenant on Civil and Political Rights." Id. ¶ 27. Specifically, the amended complaint alleges that Liao wrote a letter to Representative Smith, complaining that, just like in China, "American Internet companies, Yahoo, Google, and other American based message boards, etc. were restricting [her] freedom of expression on the Internet" by "shut[ting] down [her] Web Site, delet[ing] and filter[ing her] posts from publishing even on those unmoderated Internet news groups, etc., so imposed same kind of restriction of freedom of expression on me as that been done to Chinese people in China by them." Id. ¶

105. In this letter, Liao described her experiences with these companies and made an urgent request that Representative Smith act on her complaint. Id. Liao stated that she is "Chinese and [her] human rights complaint involves the same and even more brutal abuses, as compared to those abuses cited for Chinese government in the 2005 Country Human Rights Practice Report (Report) issued by the US Department of State." Id. ¶ 107. Liao explained that her human rights complaint was against the United States and Canadian governments, and that she believed that Congress should give it priority for an investigative hearing. Id.

Liao also brought up other issues in the letter, including "that American government agent colluded with the former Supreme Court of Canada judge, High Commissioner for Human Rights at UN Louis Arbor to cover up for US and Canadian governments, seized all my complaints sent to the UN's international human rights bodies, in violation of the UN's human rights complaint rules, and the death threat I received on Yahoo's message board while posting my story, etc." FAC ¶ 106.

Liao never received a response from Representative Smith. FAC ¶ 108. Liao asserts that Representative Smith's silence regarding her complaint "can only mean that he condones and endorses the gross human rights abuses committed by his own US government and Canadian government." Id. ¶ 109.

On March 18, 2009, Judge Armstrong filed a motion to dismiss. Representative Smith filed a motion to dismiss on March 25, 2009. No oppositions were filed. Replies were filed on April 13, 2009.

**DISCUSSION**

A.  Standard

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim. A claim may be dismissed only 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal pursuant to Rule 12(b)(6) is appropriate where there is no cognizable legal theory or there is an absence of sufficient facts alleged to support a cognizable legal theory. Id. When the plaintiff appears *pro se*, the court must construe the

allegations of the complaint liberally and must afford the plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). This rule of liberal construction is particularly important in civil rights cases. Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8. Rule 8 requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P 8(a)(2). Specific facts are unnecessary - the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)). In order to survive a dismissal motion, a plaintiff must allege facts that are enough to raise her right to relief "above the speculative level." Twombly, 127 S.Ct. at 1965. While the complaint "does not need detailed factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. In short, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable. Id. at 1974.

B. Analysis

1. Judge Armstrong's Motion To Dismiss

Judge Armstrong argues that dismissal is appropriate because she is entitled to absolute judicial immunity for the acts alleged in the amended complaint. The court agrees.

Federal judges are absolutely immune from civil liability for damages for acts performed in their judicial capacity. Pierson v. Ray, 386 U.S. 547, 553-54 (1967); Mireles

v. Waco, 502 U.S. 9, 9-10 (1991). Judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir. 1996) (quotation marks omitted). This immunity is not limited merely to suits for damages but extends also to claims for declaratory, injunctive, or other equitable relief arising from judicial acts. Id. at 1234-44. The only exceptions to the rule are if the judge acts wholly without jurisdiction, or if the acts in question were not undertaken in a judicial capacity. Id. at 1244 (citations omitted). Judicial acts are those in which a judge is "perform[ing] the function of resolving disputes between parties, or of authoritatively adjudicating private rights." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435-36 (1993); see also Stump v. Sparkman, 435 U.S. 349, 362 (1978) (An act is "judicial" when it is a function normally performed by a judge and the parties dealt with the judge in his judicial capacity.).

Although the allegations against Judge Armstrong are largely incoherent, it is clear that the acts alleged in the amended complaint were performed by Judge Armstrong in her judicial capacity insofar as they pertain to judicial functions in the adjudication of Liao v. Cahill, 03-2906-SBA. Therefore, she is entitled to absolute judicial immunity. Accordingly, the claim asserted against Judge Armstrong is dismissed for failure to state a claim upon which relief can be granted.

2. Representative Smith's Motion To Dismiss

Representative Smith argues that dismissal is appropriate for two reasons: (1) the claims asserted against him are barred by the Speech or Debate Clause of the United States Constitution; and (2) the Constitution does not require a legislator to listen or act upon a constituent's concerns.

Because the claims asserted against Representative Smith are predicated on his failure to take action or respond to Liao's request for assistance, dismissal of these claims is appropriate. Liao's allegations, even if true, do not arise to the level of an actionable wrong. A member of Congress' refusal to assist a constituent in response to the constituent's request for help does not create a cognizable claim. See Richards v. Harper,

864 F.2d 85, 88 (9th Cir. 1988) (affirming district court finding that a constituent is not entitled to sue for damages simply because his or her representative fails to perform according to the constituent's wishes) Craft v. McNulty, 875 F.Supp. 121, 124 (N.D.N.Y. 1995) (finding that fact that defendant Congressman "failed to follow-up on the alleged wrongdoings of an Internal Revenue Service personnel is neither inappropriate nor actionable under the laws"); Adams v. Richardson, 871 F.Supp. 43, 45 (D.D.C. 1994) (finding that there is no constitutional right to have a Congressman make particular decisions or take particular actions; noting that a Congressman's decisions on when and how to address his constituents were well within his legislative discretion and are matters with which the courts should not become enmeshed). Accordingly, the claims asserted against Representative Smith are dismissed for failure to state a claim upon which relief can be granted.[1]

**CONCLUSION**

For the reasons stated above, the court GRANTS the motions to dismiss. Because it is absolutely clear to the court that the deficiencies of the complaint are incapable of being cured by amendment, the claims asserted by Liao against Judge Armstrong and Representative Smith are DISMISSED with prejudice. See Karim-Panahi, 839 F.2d at 623 (A court must give a *pro se* litigant leave to amend his or her complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."). In addition, because Liao failed to file an amended complaint by April 2, 2009, curing the deficiencies of the amended complaint identified by the court with respect to her claims asserted against CNN, these claims are DISMISSED with prejudice. Liao had adequate warning that dismissal would result from her non-compliance. The court's March 11, 2009 Order specifically stated that "if Liao fails to file a timely amended complaint curing the deficiencies identified by the court, her claims against CNN will be dismissed with

[1] Because the court finds that dismissal on this basis is appropriate, it need not consider Representative Smith's alternative argument for dismissal.

prejudice." Finally, the court notes that the only remaining defendant in this action is California Deputy Attorney General Kay Yu.

**IT IS SO ORDERED.**

Dated: April 21, 2009

PHYLLIS J. HAMILTON
United States District Judge